## DIKEMAN *vs.* TAYLOR.

Where the premises, in a deed of land, were described as " the north half of a certain lot of land, with the store standing on said north half," and the whole lot was bounded in said deed, and said north half described as " bounded south on the grantor's own land," and a corner of said store, which was a permanent building, projected a short distance beyond a line drawn from a point in the middle of the front line of said lot, to a point in the middle of the rear line thereof; it was held, that said deed conveyed the north half of said lot as designated by said line, and also so much south of said line as was covered by said store.

On the trial of an action of ejectment, it was proved that the plaintiff and defendant, who were adjoining proprietors of land, each claiming to own the premises in controversy, had each occasionally occupied beyond his own line, and that the defendant had given the plaintiff a written notice not to trespass upon his land, claiming, in it, to own all the land north of a certain line mentioned therein, and the plaintiff claimed to have proved an ouster by the defendant, and the court submitted such notice, in connection with evidence of the acts of the parties, to the jury, instructing them that an ouster was not constituted by mere words, but that the notice might serve to give a construction to such acts, as the defendant had committed upon the land beyond his line, and directing them to find whether said notice, in connection with the acts proved, was, or was not, sufficient evidence of such ouster; it was held, that such course was correct.

THIS was an action of ejectment for a parcel of land, lying in the town of Westport, tried at the term of the superior court for Fairfield county, holden in August, 1855.

The plaintiff and defendant each claimed title to the premises in question, by deeds from one Charles Fox.

It was admitted on the trial, that on the    day of
      Fox was the owner in fee of a certain piece of land,
embracing that in dispute in the present action; that, at that
time, the store hereinafter mentioned, stood on the northern
part thereof, and had stood there for more than forty years;
that subsequently Fox erected a butcher's shop adjoining
said store, and thereafter occupied said store and shop, him-
self, until    when he leased said store to the defendant,
who thenceforward occupied it until November 3d, 1849,
when Fox, executed and delivered his deed of that date,
to the defendant, under which the defendant claims title
to the premises in question.    The property, conveyed by
said deed, was described therein as follows: " the north
half of a certain lot of land lying in Westport, the whole lot
being about forty-one feet front, and about ninety feet deep,
with the store standing on said north half; the whole lot is
bounded north by Charles Allen, east by highway, south by
Ebenezer Jessup, and west by Saugatuck river; and the north
half is bounded south by my own land."

The defendant thenceforward, and up to the time of the
conveyance, hereafter mentioned, to the plaintiff, occupied
the whole property, described in his aforesaid deed from Fox,
claiming it as his own, and occupied said store up to the
time when this action was brought, and all the property
lying north of a straight line, drawn from a point in the mid-
dle of the front to the middle of the rear line thereof.

Afterward, on the 24th day of March, 1854, Fox executed
and delivered to the plaintiff, a deed of that date, under
which the plaintiff claimed, and in which the premises were
described as follows: a " lot of land, situated in said West-
port, bounded north by Solomon G. Taylor, east by highway,
south by Ebenezer Jessup, and west by Saugatuck river, said
lot of land being about twenty feet front, and about ninety
feet deep, with the butcher's shop thereon standing; it being.
that part of the lot which I bought of Samuel Avery and
wife, which is not conveyed to Solomon G. Taylor, by deed
bearing date the 3d day of November, 1849, and recorded in

the record of lands of said Westport, intending to convey to said grantee all the privileges reserved in said deed to said Taylor, to which deed reference is had for more particular description."

It was also admitted, that said Saugatuck river is at that place a navigable river, where business is done by shipping, and that the ground in the rear of said store, as well as that in the rear of said butcher's shop, is chiefly a wharf on said river in its navigable part; that the part thereof belonging to the defendant, by said deed to him was never by fence, or in any other way, separated from that belonging to the plaintiff by his deed, unless in part, as hereinafter mentioned.

The plaintiff claimed, upon the facts, that he was entitled to all the land lying south of a line drawn from a point in the middle of the front line, to the middle of the rear line, at the edge of said wharf, including land covered by a part of said store of the defendant, the same standing where it stood when Fox conveyed to the defendant, and where it has ever since stood.

This claim of the plaintiff the defendant denied, and insisted that, by said deed to him, he became, and was, entitled to all the property so conveyed by said Fox, which lies north of a line drawn direct from said point, in the middle of the front line, to the south-west corner of said store, and thence running in a continued straight course to the said rear line. It appeared that a line drawn in a direct course from said point in the middle of the front line, touching said south-west corner of said store, to the said rear line, would give the defendant somewhat more, but how much more was not shown, than just one-half of the whole property owned by said Fox.

Each party requested the court to instruct the jury, in conformity with his claim.

The court charged the jury, that, if they should find that the store of the defendant, at the time of said deed to him, was not a temporary building, but a building permanent in its character, the removal of which was not contemplated by

the parties, the defendant was entitled, on the facts aforesaid, to all of said land lying north of the line drawn from the middle of the front to the middle of the rear of the whole lot, and also to all south of said line, which was covered by said store ; but that the plaintiff was, on the facts aforesaid, entitled to all that so lying in the rear of said store, south of said line, except that covered by said store.

The defendant also denied that he had ever ousted the plaintiff from any part of said land, so in the rear of said store, and south of said line drawn as last mentioned.

The plaintiff admitted, that, before the present action was brought, he erected and had ever since occupied an addition to his said butcher's shop, extending some distance along the rear of defendant's said store and adjoining thereto; that at that time he, the plaintiff, placed a line of dirt and stones, extending beyond the store westwardly towards the river, in a line which was a part of a straight line, drawn from a point in the middle of the front to the middle of the rear, for a short distance westward of the defendant's store, but for the residue of the distance to the wharf, there was nothing to separate the plaintiff's and defendant's lands.

To prove an ouster by the defendant, the plaintiff testified that the defendant had, in the use of his said store from time to time, thrown out barrels and boxes on the said wharf promiscuously, in one place and another, as it happened, and sometimes a little south of said line last mentioned, and on cross-examination, he testified that he himself had, during the same time, in the use of said butcher's shop, from time to time, thrown out barrels on said wharf in like manner, and sometimes a little over and north of said line, and had, during the same time, in the use of his said store, from time to time, and almost, or quite, weekly, driven his horse and wagon over the said wharf, as well that part lying north of said line, as that lying south thereof; but he did not testify that the defendant ever, at any time, after he so placed said line of stones and dirt, threw any barrels or boxes on, or ex-

ercised any act of ownership on or over, the part of said wharf so lying south of said line last mentioned, but testified that he did not know that the defendant had ever done either, since said line of stones and dirt was so placed as aforesaid. He also gave in evidence the following notice from the defendant to him :

WESTPORT, Sept. 6, 1853.

To JOHN B. DIKEMAN, Esq.

Dear Sir : I hereby forbid you to trespass, either by yourself, or any other person, in any way, on any part of my property adjoining you, on penalty of the law. And I hereby give you notice, that I claim to own all the land, north of a line running from a middle point between us in the front line, in a straight and direct line to the south-west corner of my store, and thence in a direct continuous line to Saugatuck river.

SOLOMON G. TAYLOR.

The plaintiff testified that, before the defendant gave him said notice, he had made arrangements and preparations for building said addition, of which the defendant had knowledge.

The defendant testified, that said barrels and boxes were thrown out by him for mere occasional convenience, and without reference to any line between his property and that of the plaintiff, and that after said line of stones and dirt was so placed, he never placed any barrels or boxes or other things on said property, south of said line, nor had any possession over, nor exercised any act of ownership on, or over the said property so lying south of said line ; and that before he gave said notice to the defendant, the latter had made preparations within the defendant's knowledge, for erecting said addition, and had laid the stone underpinning thereof.

There was no other evidence offered by the plaintiff, or before the jury, of any occupancy or possession, by the defendant, of the said property in the rear of said store, or other

buildings, or of any act of ownership thereon by the defendant, or of any ouster by the defendant.

The defendant insisted and prayed the court to instruct the jury, that said evidence was no evidence of such ouster, and. that by the testimony, no ouster was shown, and that such evidence was not sufficient to prove, and that it did not tend to prove, such ouster.

The court did not so instruct the jury, but instructed them that said notice was admissible in evidence, as tending to prove an ouster, by the defendant, of the plaintiff from the premises, claimed by the defendant to belong to him in said notice; that an ouster was an act, and that mere words did not constitute an ouster, but the notice was claimed to contain an implied admission that the defendant was in possession, forbidding the plaintiff's entry, and that, in connection with acts of ownership upon the land in the rear of the store, the notice might furnish evidence to show the line to which the defendant claimed title, and give a construction to the defendant's acts, but that whether said notice and the acts of the defendant proved were sufficient evidence of ouster, was a question of fact for the jury.

The jury returned a verdict in favor of the plaintiff, and found for him to recover of the defendant, the seizin, and peaceable possession of the demanded premises, except the land covered by the defendant's store.

Both plaintiff and defendant thereupon moved for a new trial, claiming that the rulings of the court, adverse to their respective claims, were erroneous.

*Dutton,* and *Carter,* and *Ferry,* for the plaintiff.

I. The court should have charged the jury, that the line claimed by the plaintiff was the true line.

Where a grant is made in explicit terms, subsequent inconsistent expressions will be rejected. *Worthington* v. *Hillyer,* 4 Mass. R., 196. *Cutler* v. *Tufts,* 3 Pick., 272. 2 Greenl. Cr., 307, n. 1.

*Falsa demonstratio non nocet.*   1 Greenl. Ev., § 301.   The expression, "half of the lot," is a definite legal term, and admits of no doubt as to its extent.

The court erred, in submitting to the jury the question, whether the building was of a temporary, or permanent character; and whether the parties contemplated its removal or not. Whether the parties to the deed would be affected by such circumstances, or not, the plaintiff ought not to be affected by anything except what appears on record.   Nothing appears there, to lead him to make any enquiry.

If the line of the store was to be followed, the line west of the store should be further north than the line drawn by the plaintiff.   Both parts of the description should be complied with; the deed should, if it conveys the land covered by the store, also convey half of the lot and no more.   *Nichols* v. *Turney,* 15 Conn. R., 101.

II. The charge of the court, as to the evidence of ouster, was correct.

1. The only question is, whether the evidence tended to prove an ouster, and not whether it was sufficient.

2. Where a man enters into a piece of land, he takes possession, in contemplation of law, of the whole which he claims.

3. The notice is an admission that the defendant was in possession of the land south of the plaintiff's line.   *Giddings* v. *Canfield,* 4 Conn. R., 482.

4. The defendant is claiming title to the same land in this case.


*Hawley* and *Wilson,* for the defendant.

1. As the defendant's deed was first given, he takes all that deed purports to give, and without reference to the subsequent deed to the plaintiff, who stands on the same ground as if Fox were the plaintiff.

If there be any ambiguity in the defendant's deed, it is to be resolved, unfavorably to the plaintiff, and not to the defendant, as it would be if Fox were the plaintiff.

2. The expression, "northern half," does not necessarily mean just a moiety. In its popular signification, it means about half, more or less, a mere conjectural estimate of quantity, measure or distance.

As matter of description, it yields to metes and bounds, courses and distances; indeed to every other description with which the term, construed as signifying an exact moiety, would be inconsistent.

Generally, description by quantity yields to any and every other ordinary mode of description. *Newsom* v. *Pryor*, 7 Wheat., 7. *Belden* v. *Seymour*, 8 Conn. R., 19. *Shipp* v. *Miller*, 2 Wheat., 316. *Powell* v. *Clark*, 5 Mass. R., 355. *Mann* v. *Pearson*, 2 Johns., 37. *Jackson* v. *Barringer*, 15 Johns., 471. *Nichols* v. *Turney*, 15 Conn. R., 102.

3. The defendant's deed clearly gives him the whole store, and as clearly gives the land it stands on. *Allen* v. *Scott*, 21 Pick., 25. *Bacon* v. *Bowdoin*, 22 Pick., 401. Shep. T., 94.

The defendant's line then runs from the front middle point, to the south-west corner of the store, and must be a straight line between those points. Thence the line should be a straight line to the dock, to some point on the dock; and this, whether it run in the same course with the line to the corner or not. Such course first and naturally suggests itself, and if there be doubt, it is to be resolved in the defendant's favor. A zig-zag line, bringing the plaintiff round in the rear of, and contiguous to, the defendant's store, could not have been intended, especially as this cuts the defendant off from much of the wharf, in the rear of the store, the enjoyment of the whole of which is essential to the full, or convenient, enjoyment of the store. A line run for any purpose will be intended a straight line, unless there be something else requiring a different line.

4. The defendant's boundary on the west is, by his deed, the river only, whereas if the plaintiff runs back of his store, it is partly west by plaintiff. So the plaintiff's eastern boundary is, by his deed, the highway only; whereas, if he

runs round back of the store, it is partly east by the defendant. These considerations are important in determining the intent of the parties, as to the dividing line, and show clearly that they intended a straight line. The same considerations show that the parties intended a continuous straight line, from the front middle point, touching the south-west corner of the store, to the dock.

5. On the question of ouster, the court should have charged as the defendant claimed. The plaintiff's testimony showed there was no ouster, and so the court should have told the jury. The notice was indeed an assertion of claim of title, but no evidence whatever of possession; and as it was given as a mere prohibition of the plaintiff, to take possession, or to trespass thereon, it did not tend to prove that, after the plaintiff had thus taken possession, the defendant entered into possession and ousted him. But the plaintiff's own testimony showed, that, at the commencement of the action, the defendant was not in possession at all, and that the plaintiff was not ousted.

HINMAN, J. The parties in this case were adjoining proprietors of lots in the village of Westport, which were bounded on the east by a highway, and on the west by Saugatuck river. They both claimed under deeds from Charles Fox, but the defendant's deed was first given, and conveys all that it purports to grant, while the plaintiff's deed expressly describes his lot, as that part of the land which was not conveyed to the defendant. The controversy was in respect to the dividing line between the lots; and both parties claim a new trial, for the error of the judge in charging the jury. The defendant also asks for a new trial, on the ground that there was not sufficient evidence of ouster, to be submitted to the jury. We do not advise a new trial, on any point; being satisfied that the course, adopted by the court, was correct, under the circumstances. In respect to the dividing line between the parties, the main object is to

get at the true meaning of the deed to the defendant. That deed is dated the third of November, 1849, and the property conveyed is described in it, as " the north half of a certain lot of land, lying in said Westport, the whole lot being about forty-one feet front, and about ninety feet deep, with the store, standing on said north half. The whole lot is bounded north by Charles Allen, east by the highway, south by Ebenezer Jessup, and west by Saugatuck river ; and the north half is bounded south by my own land." This description was substantially correct, in respect to the whole lot, but was not a full, or precise description of it. There was a trifle over forty feet on the front line, by the highway, but only twenty-two feet, five inches, on the rear line, by the river ; and the store, instead of standing on the north half, projects into the south half, at its south-west corner, in such manner, as to render it impossible to include it in the north half of the lot, provided the line is straight from the centre of the front, to the centre of the rear of the whole lot. There was also a butcher's shop on the front line, opposite the store, and adjoining it, so as to render it impossible, without an accurate survey of the premises, for the parties to know where the line would pass through the lot.

Now, under these circumstances, it seems obvious that, by the deed, the parties intended to divide the lot into two equal parts, by a straight line, running from the centre of the front, to the centre of the rear line of the whole lot. It was also intended to convey to the defendant, the store, and the land on which it stands. It was a permanent building, then in the possession of the grantor, and to obtain it, was, probably, the principal object of the defendant, in making the purchase. The court charged the jury, that if the store was not a temporary building, but a building permanent in its character, the removal of which was not contemplated by the parties, the defendant was entitled to the north half of the land, according to a line, to be drawn from the centre of the front to the centre of the rear, of the whole lot ; and also, to all

Dikeman *v.* Taylor.

south of that line, which was covered by the store. We think this was a correct construction of the deed, as the property was situated. There is, as we have seen, a sufficient description of what was intended to be conveyed—the north half of the whole lot, together with the store. The store being a permanent building, not intended to be removed, the conveyance of it passed the land on which it stood, upon the familiar principle, that the grant of a house carries with it the garden and curtilage on which it stands. 2 Saund., 401, n. 2. And although the words, "standing on said north half," are superadded to the word store, yet as this was an erroneous description, added to one that was accurate and precise, they are words to which the maxim, *falsa demonstratio non nocet,* properly applies, and may therefore be rejected.

It was said, that a crooked, or zigzag line, was not intended by the parties, and it is probably true, that they supposed the store stood upon the north half of the lot, but, as the main object was to convey the store together with the lot, we think it correct to carry out this intention, as nearly as is practicable.

The charge gave the parties the straight line, as one of the controlling points, in the description; and gave effect also to the other obvious intention, of conveying the store. This was in conformity with the case of *Nichols* v. *Turney,* 15 Conn. R., 101, which bears some analogy to this case.

The parties, to some extent, had occupied the land between the store and the river, promiscuously, each occasionally occupying over the line, on the land of his adjoining proprietor. This, at most, was very slight evidence of ouster, by the defendant; and, alone, would have been wholly insufficient to justify a verdict, finding an ouster. But the defendant had given the plaintiff a written notice, not to trespass on his part of the property, and, in it, he claimed to own all the land north of a line, running from a middle point in the front line of both lots, in a straight line, to the south-west corner of the store, and thence, in a direct continuous line to

the river. The court submitted this, in connection with the other acts mentioned above, to the jury, to prove the ouster claimed, instructing them, that an ouster was an act, which was not constituted by mere words, but that the notice might serve to give a construction to such acts, as it was shown the defendant had committed, over the true line; and submitted it to the jury, to find, whether said notice, in connection with the acts proved, was sufficient evidence of ouster. We think this was the proper course, and consequently, there was no error, on either point, in the case.

Upon the plaintiff's claim for a new trial, on the ground that the charge did not give him as much land as he was entitled to, under his deed, nothing need be said. As we think the charge correct, it follows that the claim could not be sustained.

In this opinion, the other judges, WAITE and STORRS, concurred.

A new trial not to be granted.