## William Filby *versus* George Miller *et al.*

An attorney-at-law, as such, has no authority to compromise and discontinue a suit brought for the recovery of land of his client, in consideration of the other party conveying to himself a portion of the land: but if he makes such compromise, and the discontinuance is entered of record, and the client does no act to manifest his dissent for a number of years, he will be held to have acquiesced in the discontinuance, and the terms upon which it was entered.

The other party, having had the benefit of the discontinuance, cannot invalidate his conveyance upon the allegation that the attorney exceeded his authority in making the compromise.

Nor could he repudiate the conveyance upon the ground that the consideration for making it was, in addition to the discontinuance of the suit, that a good title was to be made to him for the balance of the tract, which had not been done: having received a part of the consideration, his remedy was to enforce, not to destroy the contract.

A *bonâ fide* purchaser, for value of the land thus conveyed to the attorney, without notice of the circumstances alleged against the validity of the title, would hold it discharged from equities between the parties.

And a subsequent purchaser *with notice*, could protect himself by the equity of a former one, who purchased *without* any such notice.

ERROR to the Common Pleas of *Greene county.*

The action was ejectment for 100 acres of land in Alleppo township. The title was admitted to be out of the Commonwealth. The land in dispute was part of a larger tract, called "Fox Hill," which the plaintiff alleged was patented on the 4th August, 1785, to John Hughes and Timothy Ryan. In 1841 or 1842, several of the heirs of Timothy Ryan agreed in writing with R. D. Bird, Esq., a practising attorney, to pay him $300 in land, for his services in looking after and recovering their lands in Greene county. Mr. Bird expended considerable money in having surveys made of their lands, procuring copies of papers, and spent much time and labour; and, in 1844, brought an ejectment to recover the "Fox Hill" tract. But, entertaining doubts whether the title of the heirs of Ryan were not barred by the statute of limitations, he compromised the case with the heirs of Jacob Miller, deceased; and they released to him, in his own name, 100 acres of the tract, and he discontinued the ejectment in 1846. On the 16th December, 1851, R. D. Bird and wife conveyed this 100 acres to William Hughes, for the consideration of $300. For a part of this amount he took a judgment against Hughes, and, under this judgment, it was levied and sold by the sheriff, as the property of William Hughes, to Hugh Montgomery, for $182.50, and Montgomery conveyed it to William Filby, the plaintiff in this action.

The defendants claimed under Jacob Miller, who settled on the "Fox Hill" tract, between 1821 and 1824, and also set up that

[Filby v. Miller.]

the release to R. D. Bird, by Jacob Miller's heirs, was invalid, because he, as the counsel of Ryan's heirs, had no authority to make the compromise, or take a conveyance of the land to himself.

The plaintiff submitted the following points:—

1. That if R. D. Bird, who was the attorney-at-law of Ryan's heirs, discontinued the suit which they had brought against the defendants in this suit; that such discontinuance, being without terms, is binding on the plaintiffs (viz., Ryan's heirs,) and they cannot gainsay it; but are left to their action against him (Bird) —consequently it is good in favour of the defendants (Millers.)

2. That if R. D. Bird made a compromise with defendants by which he got the land in dispute, in consideration of the discontinuance of a suit against them, and did so discontinue it, and that said defendants have had the advantage of that discontinuance for nine years, till their title has become absolute to the residue of said tract by the statute of limitations, that defendants are now estopped from repudiating the validity of said discontinuance.

3. That if the jury believed that R. D. Bird had an agreement in writing with the heirs of Ryan that he was to have an interest in the land for professional service rendered and expenses paid, that it gave him such a power, coupled with an interest in the land, that the discontinuance by him was not void, and the defendant still enjoying all his part of the compromise, that he cannot now repudiate it.

His Honour, GILMORE, P. J., answered these points as follows:—

"1. An attorney at law doubtless has authority to bind his client by confession of judgment or discontinuance; and when he does so without terms, which shows that he exceeded his authority, the client is concluded by it; and is turned round against him for breach of instructions: 9 *Barr* 316. But in this case, if the witnesses are to be believed, there were terms that, in consideration of the conveyance to the attorney of the plaintiff, the ejectment was to be discontinued, and more that he (the attorney) was to make, or cause to be made, a good and sufficient title for the remainder of the tract. Such an agreement, we say, would be beyond the authority of an attorney, and any conveyance made upon such consideration would be invalid.

"2. We answer this in the negative, the discontinuance was invalid, and could and would have been stricken off at any time upon application to the Court.

"There is no evidence that Ryan's heirs ever sanctioned this agreement—so that defendants could gain nothing by this discontinuance.

"3. We charge you that this proposition is not correct.

"The Court then told the jury the case involved an inquiry of notice; if Montgomery had notice of defendants' title at the

sheriff's sale, defendants will be entitled to your verdict.   If, on the contrary, no notice was given at the time of the sheriff's sale, and neither George Miller or any one in possession under him at the time, plaintiff will be entitled to recover.

"To, which charge the plaintiff excepts."

The jury found for the defendants, and the plaintiff sued out this writ.

Errors assigned: The Court erred in their answer to the plaintiff's 1st point.

The Court erred in their answer to the plaintiff's 2d point.

The Court erred in their answer to the plaintiff's 3d point.

The Court erred in their general charge wherein they "told the jury the case involved an inquiry of notice; if Montgomery had notice of the defendants' title at the sheriff's sale, defendants will be entitled to your verdict."

*Purman,* for plaintiff in error.—Where an attorney is employed, and brings suit and discontinues, it is binding and conclusive upon the client: 5 *Cowen* 385; 6 *Johns.* 296.   In Pennsylvania the authority is more extensive than elsewhere: 16 *Ser. & R.* 368; 9 *Barr* 102; 5 *Watts* 235.   It is more especially binding where the discontinuance, as here, is of record, and the clients have acquiesced for years.   It was, like the contracts of infants, at most voidable: 13 *Mass.* 237; 6 *Ala.* 544; 9 *Missouri* 135; 7 *Watts* 412; 5 *Cowen* 475.   He may confirm it: 3 *Barr* 428; 2 *Edw.* 566; 1 *Pick.* 221; 12 *N. H.* 196.   A purchaser without notice would not be affected by it, the conveyance being in Bird's own name: 3 *Yeates* 269; 2 *Watts* 78; 4 *W. & Ser.* 152.

2. It would be a fraud on purchasers to allow the defendants to avoid and repudiate their own conveyance: 9 *Cowen* 274; 4 *Met.* 384; 9 *Wend.* 147; 19 *Ad. & El.* 90; 3 *Hill* 219; 15 *Ser. & R.* 18; 1 *Pa. Rep.* 476; 2 *Watts* 379.

After so long an acquiescence, and the rights of third persons have intervened, it cannot be avoided: 1 *Barr* 147; 2 *Watts* 490; 6 *Johns.* 301; 1 *Binn.* 469.   There was no notice to any of the purchasers, and it was error to submit it to the jury: 5 *W. & Ser.* 61; 6 *W. & Ser.* 488.

*Lindsey,* for defendant in error.—The relation of an attorney to his client is one of confidence and trust.   He cannot compromise a suit by which his client is to get money for land, or *vice versa:* 14 *Ser. & R.* 307; 1 *Pa. Rep.* 267; 9 *Barr* 315; 1 *Barr* 157; 7 *Barr* 185; 7 *Watts* 63.

There was notice to Filby, and he was not a *bonâ fide* purchaser for value without notice.   There is constructive as well as actual notice.   The defendants were in possession when Filby bought,

[Filby v. Miller.]

and this was sufficient to put him on inquiry as to the title by which they claimed to hold.

The opinion of the Court was delivered by

KNOX, J.—The compromise made by R. D. Bird, with the heirs of Jacob Miller, was not within the scope of his authority, as attorney-at-law for the heirs of Timothy Ryan, nor would his agreement with some of the heirs, that he should be paid in land for his services, give him the right to divide the land in dispute between himself and the defendant. But his arrangement with the heirs of Miller, though unauthorized by his clients, might be ratified by them; and, if so, it would be binding upon all who had consented to it. There was no direct evidence of precedent authority, nor of subsequent assent, but the long acquiescence of the heirs of Ryan in the discontinuance of the ejectment, afforded strong ground for the presumption that they were willing to adopt it as their act. After a period of nine years has passed without any objection to the discontinuance by either party, and without any other effort being made by the heirs of Ryan to disturb the possession of Miller to the residue of the tract, it is to be presumed that the act of the attorney was ratified by his clients; and the other party, after having the benefit of the discontinuance, cannot now invalidate the release by the allegation that Bird exceeded his authority in making the compromise. It is said that part of the consideration, for the release to Bird of the 90 acres, was his promise to make, or cause to be made, a good title to the heirs of Miller for the residue, and that in this he had failed. Granting this to be as alleged, it would not make the deed of release inoperative. Where part of the consideration is paid, and a deed executed, a failure by the vendee or releasee to perform according to the agreement, will not of itself authorize the grantor or releasor to treat his release as a nullity, and retake possession of the land released, and particularly will he not be permitted to do this, whilst he retains the part consideration paid before the execution of the release. His remedy is to enforce the agreement, not to destroy it. It is argued by the defendant in error, that, as there was no evidence that Mr. Bird notified his clients of the compromise, their assent to it could not be presumed from their silence. If the controversy was between the Ryan and the Miller heirs, this argument would not avail the former, for the discontinuance being of record would be sufficient notice to put them on inquiry as to the terms upon which it was entered, and if they neglected to obtain the information, they would be held to the agreement as fully as though express notice had been given to them; and as the client would not now be permitted to deny the validity of the act of his attorney, in entering the discontinuance, it is plain that the defendants in the ejectment cannot do so.

[Filby *v.* Miller.]

The learned judge, who presided upon the trial in the Common Pleas, erred in his instruction to the jury, that, as the agreement was beyond the authority of the attorney, the release was invalid. He should have instructed them, that, even if the attorney exceeded his authority in making the compromise, his clients had ratified it by their acquiescence, and it could not be questioned by the heirs of Miller. It is alleged by the defendant in error that the release was obtained by the fraudulent misrepresentations of Bird, and therefore void. The question of actual fraud was not passed upon by either Court or jury: it has not been considered in any remarks that we have made. As the case is sent back for a new trial, it is proper to add, that in our opinion, the Court should not have limited the inquiry as to notice to Montgomery alone. If the first purchaser from Bird (William Hughes) paid a valuable consideration, and purchased without notice, actual or constructive, that the land was claimed by the heirs of Miller, his (Hughes') title was perfect, and a purchaser at sheriff's sale would be protected by it, even with notice of the outstanding claim. So too, if Hughes and Montgomery had notice, and Filby, the present plaintiff, was a *bonâ fide* purchaser for a valuable consideration without notice, his right to recover would be unquestionable. If Filby, however, is not a *bonâ fide* purchaser, but holds the title for Bird, of course he is not in the position to raise the question of notice. It is scarcely necessary to add, that actual possession of the land in dispute by the heirs of Miller, or any of them, or their tenants, was sufficient to put the purchaser upon inquiry.

Judgment reversed and *venire de novo* awarded.