**Wimer Condemnation**

*Perry L. Reeher,* for Commonwealth.

*Frank O. Moretti* and *Errol Fullerton,* for defendants.

HENDERSON, P. J., November 29, 1971.—In this case, John C. Wimer and Shirley E. Wimer (hereinafter known as "Wimer") are the record owners of a certain parcel of property located in Neshannock Township, Lawrence County, Pa., which was condemned by the Commonwealth of Pennsylvania, Department of Highways, for the construction of a limited access highway through such township. Samuel J. Reese and Elizabeth E. Reese (hereinafter known as "Reese") claim ownership of all the coal under the lands of Wimer.

On the petition of Wimer, a board of viewers was appointed to determine the damages resulting from the taking. Reese notified the board of viewers of his alleged ownership of the coal and petitioned for the convening of a State Mining Commission to determine damages for the coal. At no. 293 of 1969, M.D., Wimer filed a petition to intervene in the proceedings before the Coal Commission and both Wimer and

Reese have filed an appeal to this court from the report of the board of viewers.

Reese and Wimer each agree that this court should determine from the record the question of ownership of the coal underlying the Wimer property.

Prior to 1944, the Wimer property was part of a 97-acre tract of land owned by I. D. Long. The documents which determine this decision were recorded in the proper offices at the Lawrence County Courthouse as follows:

(a) Deed for the present Wimer property from I. D. Long to Charles Allen Long, dated August 27, 1947, and recorded the same date;

(b) Coal lease from I. D. Long to Reese, dated May 4, 1944, and recorded July 20, 1948, covering 18 acres, including the present Wimer property;

(c) Deed from Charles Allen Long, et ux., and I. D. Long to Wimer, dated May 16, 1950, and recorded May 18, 1950.

Had the Reese coal lease been recorded prior to the conveyance from I. D. Long to Charles Allen Long, then that conveyance would have been subject to such outstanding lease. Reese claims that result without the prior recording.

Among the recording statute provisions which would apply to this case, we rely in particular on the Act of March 18, 1775, 1 Sm. L. 422, sec. 1, as amended by the Act of May 19, 1893, P. L. 108, sec. 1, 21 PS §444, which provides that any conveyances under which title to land "may be in any way affected in law or equity" must be recorded within 90 days following the execution thereof or they "shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration. . ."

Obviously, therefore, even though I. D. Long had

executed a coal lease to Reese prior to the conveyance from I. D. Long to Charles Allen Long, such outstanding interest of Reese would be considered fraudulent and void as to Charles Allen Long since the Reese interest was not recorded, provided Charles Allen Long had no prior notice thereof.

There is no allegation of any kind in the case at bar that Charles Allen Long was not a subsequent bona fide purchaser or that Charles Allen Long had either actual or constructive notice of any unrecorded interest in Reese at the time of the conveyance from I. D. Long to him, other than as mentioned hereafter.

Unless he has actual or constructive notice, a bona fide purchaser will take free of any unrecorded interest: Elder v. Hamilton, 195 Pa. 559, 46 Atl. 109 (1900).

Reese, however, questions the effect of the I. D. Long deed to Charles Allen Long, since I. D. Long joined in the Wimer deed of 1950. The Wimer deed recites as follows:

"Being the same lands intended to be conveyed by the said I. D. Long to Charles Allen Long, et ux. by deed dated August 27, 1947."

I. D. Long was joined as a grantor in this deed to clarify an error in description of two of the courses in the deed of August 27, 1947, from himself to Charles Allen Long. The monuments, however, in the deed of August 27, 1947, were correct. Reference to the description in each deed reveals that the same land was conveyed by each of the two deeds. However, the description in the deed from I. D. Long to Charles Allen Long was in error in that it contained the following identification of two of the boundaries:

". . . thence by the center line of said East Brook Road North, a distance of four hundred twenty-one and one-half (421.5) feet to a point; . . .; thence

along the line (center) of the said State Road West, a distance of one hundred forty-two (142) feet to the place of beginning . . ."

As a matter of fact, the East Brook Road does not run north and south but rather runs east and west and, as a matter of fact, the State Road runs north and south rather than east and west. These incorrect directions were corrected in the deed from Charles Allen Long, et ux., and I. D. Long to Wimer.

Does the error in the conveyance of August 27, 1947, which described the course of the East Brook Road as north and which described the course of the State Road as west so vitiate the conveyance as to not place good title to the property in question in the grantee, Charles Allen Long?

It is settled law that where courses and distances differ from the natural and artificial boundaries, the latter governs: Payne v. Howard, 107 Pa. 579, 583 (1884); Ross v. Golden, et ux., 344 Pa. 487, 490, 25 A. 2d 700, 701 (1942). In the instant case, the two public roads mentioned (the artificial boundary) were correct, but the direction or course was inaccurate. In such a situation, the monument which is correct prevails. See 5 P.L.E., Boundaries, §2. Therefore, I. D. Long effectively conveyed to Charles Allen Long all of the described property by the deed of August 27, 1947, and I. D. Long had no ownership interest remaining. Even though I. D. Long later joined in the Wimer deed, his joinder was not necessary and of no legal effect. It is, therefore, immaterial that the Reese lease was recorded before the Wimer purchase because Charles Allen Long, Wimer's grantor, was a bona fide purchaser for value. "The general rule is that if a person having notice of a previous outstanding title to, or interest in, land purchases from one with no notice, the second purchaser may protect

himself by want of notice in his vendor": 92 C.J.S. Vendor and Purchaser §360. The reason for the rule is to secure to a bona fide purchaser the full benefits of ownership. This is also the law in Pennsylvania.

"(H)e who obtains a good title to land, without knowledge of a secret equity, may convey it to any purchaser, without reference to what the latter know": Stonecipher v. Keane, 268 Pa. 540, 545, 112 A. 233, 235 (1920); see also Filby v. Miller, et al., 25 Pa. 264 (1855).

This is only a logical sequence of the doctrine that a bona fide purchaser, without notice of a secret equity, take a title unaffected by it: Logan v. Eva, et al., 144 Pa. 312, 321, 22 A. 757, 758 (1891). In short, notice at the time of the deed to Wimer has no bearing on the case before the court.

Another issue is raised by Reese concerning an agreement between I. D. Long and Reese dated March 26, 1945, and recorded May 16, 1947. This agreement was recorded over three months prior to the date and recording of the deed from I. D. Long to Charles Allen Long. The land described in the agreement to Reese is not the same land conveyed by I. D. Long to Charles Allen Long, but reference to the description indicates it concerns a three-acre portion of the larger 97 acre tract. Reese now points to the recital in that agreement and alleges that such recital should have put Charles Allen Long on notice of outstanding coal rights to him. The recital of the agreement recorded May 16, 1947, reads as follows:

". . . Said conveyance to be inclusive of all coal within and underlying said premises, part of which coal is under lease to the parties of the second part by the party of the first part by lease dated May —, 1944, . . ."

Should such language be considered to have put the purchaser, Charles Allen Long, on notice that his parcel of property was included in an unrecorded outstanding coal lease agreement?

Notice of a deed is notice of all its contents: Detwiler v. Coldren, 101 Pa. Superior Ct. 189 (1931). A recital in a deed is notice of the facts recited: Jennings, infra; Jones v. Sedwick, 383 Pa. 120 (1955). Such notice is conclusive notice.

Whatever puts a purchaser on inquiry amounts to notice, provided the inquiry becomes a duty, and would lead to knowledge of the requisite fact upon exercise of ordinary diligence: Ohio River Junction R. R. Co. v. Pennsylvania Co., 222 Pa. 573, 72 A. 271 (1909). The law imputes to a purchaser of land knowledge of every fact of which exercise of ordinary diligence would have put him in possession: Fidelity-Philadelphia Trust Co. v. Lehigh Valley Coal Co., 294 Pa. 47, 143 Atl. 474 (1928). Each case depends largely on its own particular facts: 5 Tiffany 1285.

In the instant case an article of agreement for other land of grantor in the same area contained a reference to an unrecorded lease. That such an agreement can serve as constructive notice of the things contained therein is indisputable: Lulay et al. v. Barnes, 172 Pa. 331, 34 A. 52 (1896).

We must then look to whether the specific language involved was sufficient to cause the prospective purchaser to inquire further. It would seem that a fair interpretation of the specific language of the recital would be that all of the coal under the land subject to the article of agreement was included in the article of agreement, with notice that part of the coal under that specific land had previously been included in an unrecorded coal lease. In other words, part of the coal under that three acres (not the Wimer land) was

previously under lease and by this agreement to Reese all of the coal under that three acres was being conveyed. Such interpretation would not put Charles Allen Long or Wimer under the required notice. Vague and indefinite recitals are not sufficient to put a purchaser on inquiry outside the record: Pyles v. Brown, 189 Pa. 164, 169, 42 A. 11, 13 (1899).

When an owner neglects to record his title, every presumption is in favor of the subsequent purchaser: Pyles v. Brown, supra. In addition, there is general agreement that the notice doctrine should not be liberally expanded.

"The divestment of the prior grantee has been so hampered by the extravagances of the doctrine of notice, both by inquiry and by record, as to call for every effort to terminate their progressive enfeeblement of recording policy": Philbrick, Limits of Record Search and Therefore of Notice, 93 U. Pa. L. Rev. 125, 155 (1944).

Jennings v. Bloomfield, 199 Pa. 638, 49 Atl. 135 (1901), is the typical case in which the purchaser is found to have had notice. In that case a conveyance was made subject to certain leases for oil and other purposes given at different times. In that case the deed containing such reference or recital was a deed for the encumbered land. In the case at bar, had the deed from I. D. Long to Charles Allen Long contained such recital the Jennings case would be applicable.

Other States have voided the effect of recitals which were not as vague as the one here involved. See L. C. Stroh & Sons, Inc. v. Batavia Homes & Dev. Corp., 17 App. Div. 2d 385 (1962), 234 N.Y.S. 2d 401, and Mishara v. Albion, 341 Mass. 652 (1961), 171 N.E. 2d 478.

Considering the policy of the recording acts and the general disfavor of vague recitals serving as no-

tice, we conclude that the recital clause in the instant case was ineffective to put Charles Allen Long on notice of an outstanding unrecorded coal lease covering the property which he purchased from I. D. Long.

It then follows that Reese has no coal rights in the Wimer land.