## Dunlap v. Reardon, Appellant.

*Deeds—Boundaries—Monuments on ground—Consentable line—Evidence—Question for jury.*

Where an owner of a lot fifty feet wide erects two adjoining houses on the front of the lot and subsequently conveys to each of two grantees half of the lot with the house thereon erected by a deed which describes the width thereof as being twenty-five feet, and it subsequently turns out that the center of the wall was several inches from the center of the original lot, the wall as a monument upon the ground must, as far as it was built, control against the deeds; but in an action of ejectment between the owners of the adjoining premises, where there is evidence that after a predecessor in title of the plaintiff had erected a fence on a straight line from the end of the wall projected to the rear end of the lots, a dispute arose, a survey was made, and the fence re-erected on the line called for in the deeds, the question whether the last line was a consentable line is one which should be submitted to the jury.

Argued Oct. 22, 1903.   Appeal, No. 147, Oct. T., 1903, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1902, No. 933, on verdict for plaintiff in case of Jennie C. Dunlap v. James Reardon.   Before Rice, P. J., Beaver, Orlady, Smith, Porter, Morrison and Henderson, JJ.   Reversed.

Ejectment for land in the twenty-eighth ward of the city of Philadelphia.   Before Audenried, J.

At the trial it appeared that prior to May 7, 1883, Joseph Allison was the owner of a lot of ground on Indian Queen lane, the width of which was fifty feet.   On this land there were built two adjoining houses.   On May 7, 1883, Allison conveyed to James Reardon one half of the lot with the house erected thereon, and on the same day conveyed to John Quinn the other half of the lot with the house erected on it.   The two lots back of the houses were not separated by a fence un-

36        DUNLAP v. REARDON, Appellant.

Statement of Facts—Opinion of the Court. [24 Pa. Superior Ct.

til 1884. In that year Quinn erected a fence on a line which was the projection of the line of the wall to the rear of the lots. Reardon measured his lot and found that he had only a width of twenty-four feet one inch. In the deeds to Reardon and Quinn the lots conveyed to them were described respectively as being twenty-five feet wide. The wall of the house was therefore nine inches away from the center line designated by the deeds. A dispute about the fence arose between the parties, and a surveyor was called in, and a survey made according to the deeds. Subsequently Quinn moved his fence back to the line designated by the surveyor. By various mesne conveyances Quinn's lot became vested in the plaintiff. When plaintiff took title the fence was on the line where Quinn last erected it. The court gave binding instructions for plaintiff.

*Error assigned* was in giving binding instructions for plaintiff.

*W. H. Shoemaker*, with him *W. S. Stenger*, for appellant, cited: Lukens v. Lasher, 10 Pa. Dist. Rep. 385; Bright v. Allan, 203 Pa. 394; Rock v. Greenewald, 22 Pa. Superior Ct. 641.

*Francis S. Cantrell, Jr.*, with him *Francis Cantrell*, for appellee, cited: Lodge v. Barnett, 46 Pa. 477; Western Nat. Bank's Appeal, 102 Pa. 171; Medara v. Du Bois, 187 Pa. 431; Perkins v. Gay, 3 S. & R. 327; Grogan v. Leike, 22 Pa. Superior Ct. 59.

OPINION BY MORRISON, J., December 19, 1903:

A comparison of the written evidence of title in this case with the same papers in Medara v. Du Bois, 187 Pa. 431, leaves us in no doubt that the division or party wall, so-called, separating the two brick houses, forms the dividing line between the plaintiff's and defendant's lots so far as this wall extends, to wit: between the houses. The location of this party wall is not involved in this suit except in so far as it affects the line between the parties from the rear end of said wall to the rear of the lots. It is unnecessary to decide the point, but it may be that a projection of the line marked by this wall will fix the

line between the lots to the front on Indian Queen Lane.   But
this question is not now raised and it is not decided.   We do
not consider the fact that adopting the wall as the dividing
line between the houses will give one lot a few more inches in
width than the other one a controlling fact in the case.   This
party wall is a monument on the ground which appears to have
been erected by the person who was the owner of the two lots
before they were divided.   We see no reason to doubt that
when this dividing wall was erected the then owner of the
land supposed it was placed in the center of the lot of land
which comprises the lots of the respective parties to this suit.
In other words it is quite apparent, that the buildings were
constructed on the theory that the property could be divided,
giving to the grantee of each house a lot twenty-five feet in
width, with lines running to the rear at right angles with In-
dian Queen Lane.   But in fact the wall is a few inches from
the center, and as it is a monument upon the ground, it must
control as against the deeds : Medara v. Du Bois, supra ; Rook
v. Greenewald, 22 Pa. Superior Ct. 641.

Having reached the conclusion that the wall between the
two houses fixes the true line between the two lots, so far as it
extends, the question remains as to the line from the rear end
of this wall to the rear of the lots.   Was the learned judge be-
low right in holding as a matter of law that a straight line
must be projected to the rear end of the lots, from the end of
the wall ?   If the solution of this question depended solely on
the written title papers in evidence and this wall there can be
little if any question of the correctness of his ruling.   But was
there not sufficient evidence of a dispute between Quinn and
Reardon, as to this portion of the line, and of their agreement
that the line should be as called for in their deeds, and of the
erection of a fence on that line by Quinn, and the maintaining
of it for many years prior to the plaintiff's acquiring her title,
under him, to require the submission of this question to the
jury ?   In other words was the evidence not sufficient to war-
rant a jury in finding that the fence built in the spring of 1885,
by Quinn, on the line as called for by the deeds, was the es-
tablishment of a consentable line from the rear end of the
party wall to the rear of the lots ?   If the evidence was suffi-
cient for that purpose then the learned judge erred in giving

a binding instruction for the plaintiff, and the judgment must be reversed.

Upon this question we have the deeds, each calling for a lot twenty-five feet wide fronting on Indian Queen Lane, and the side lines of these lots were described at right angles with said lane.　In 1883 Quinn claimed that his lot was several inches wider than Reardon's and erected a fence where he claimed the line was, which was a projection of the party wall line to the rear of the lots.　This narrowed Reardon's lot several inches and correspondingly widened Quinn's.　Reardon disputed with Quinn in regard to the location of this fence, and claimed that it was not upon the line.　A surveyor was called in, who ran a line in accordance with the deeds.　We then have Quinn promising that in the spring he would move the fence to this line, which he voluntarily did in the spring of 1885.　Reardon was satisfied and the fence was thereafter maintained on said line for many years, and it was there when the plaintiff acquired her title, under Quinn, and was notice to her of the location of the line between Quinn and Reardon from the rear end of the party wall to the rear end of the lots. We think this evidence should have gone to the jury under proper instructions, and if they had found in favor of the line marked by this fence, as a consentable line, their verdict should have been for the defendant.　This ejectment, as we understand it, is for a narrow strip of land about nine and a half inches wide at one end and running to a point or nearly so at the other end, extending from near the rear end of the party wall to the rear line of the lots.　It is contended that the evidence was not sufficient to establish a consentable line.　The learned judge below took this view of it and refused to submit it to the jury, and gave a binding instruction in favor of the plaintiff, which in effect gave her the land on her side of a line established by projecting the party wall to the rear line of the lots.　It is true the evidence literally read and narrowly construed, against the defendant in possession, may seem to fall short of clearly, by its very words and the writings, proving a consentable line.　But we think when all of the evidence bearing on this question, written and oral, with the legitimate inferences which a jury could have drawn from it is considered, it is sufficient to warrant a finding that Quinn and Reardon

disputed as to the true line between their lots, especially from the rear of the party wall back; that Quinn insisted that it should be fixed by a projection of the line indicated by the party wall; that Reardon disputed this, and after the survey Quinn voluntarily moved the fence to the line which divided the lots equally from near the rear of the party wall to the rear line of the lots. Now, while the evidence does not show much conversation between the disputing parties, yet it is a fact that actions often speak louder than words. It seems to us that a jury might have inferred, from all the testimony in the case, that Quinn was well aware the party wall gave him more than his twenty-five feet in width, more than his share, and learning that Reardon was dissatisfied with this Quinn indicated by his conduct that he agreed, perhaps on account of peace between himself and his neighbor, that the line should be established where he erected the fence in the spring of 1885. Certainly there can be no serious contention that there was not a dispute between these parties, and that Quinn placed the fence where Reardon said it ought to be, and Reardon acquiesced in this, and so far as they are concerned the evidence fails to show any dispute or question in regard to this portion of the line thereafter.

This adjustment only gave Reardon twenty-five feet wide from the rear end of the wall to the rear line of the lots and it gave Quinn the benefit of the narrow strip of land for the entire length of the wall, and, practically so far as appears, to the front line.

In our opinion, the evidence, with such inferences as the jury might have fairly drawn from it, brings the case within the principle of Perkins v. Gay, 3 S. & R. 327. The doctrine of that case, as indicated in the opinion of GIBSON, J., in regard to consentable lines, has become the established law of this state and it cannot now be successfully questioned. See also Hagey v. Detweiler, 35 Pa. 409, and Kellum & Cole v. Smith, 65 Pa. 86.

It is unnecessary to consider the assignments of error separately for the reason that the learned judge refused to submit the evidence to the jury and directed a verdict in favor of the plaintiff. In this we think he erred, for the reasons stated in this opinion. The assignments of error, in so far as they allege

error in refusing to submit the question of a consentable line to the jury, are sustained, and the judgment is reversed with a venire facias de novo.